IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN STANCU,                          §
                                      §
             Plaintiff,               §
                                      §
V.                                    §          No. 3:23-cv-2566-K-BN
                                      §
HRI LODGING/HILTON GARDEN INN, §
                                      §
             Defendant.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff John Stancu filed a *pro se* complaint alleging that his former employer violated the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 3.

Stancu also paid the applicable filing fee and thereby assumed the responsibility to serve each defendant in compliance with Federal Rule of Civil Procedure 4. *Cf.* Dkt. Nos. 4 & 5 (summons issued to Stancu).

And United States District Judge Ed Kinkeade referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendant HRI Lodging, LLC ("HRI") has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(5) (for improper service) and 12(b)(6) (for failure to state a claim on which relief may be granted). *See* Dkt. No. 6. Stancu responded. *See* Dkt. No. 12. And HRI replied. *See* Dkt. No. 13.

The undersigned now enters these findings of fact, conclusions of law, and

recommendation that the Court should dismiss the complaint but allow Stancu an opportunity to file an amended complaint and require that he properly serve that amended complaint on HRI.

## Legal Standards

Service of process is "fundamental to any procedural imposition on a named defendant" and is therefore "the official trigger for responsive action by an individual or entity named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 353 (1999).

Consequently, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4." *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, *see* FED. R. CIV. P. 4(k)(2)); *see also Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court ... asserts jurisdiction over the person of the party served.").

Both Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) "challenge the sufficiency of service of the summons and complaint." *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 13532582, at *1 (E.D. La. Mar. 17, 2015). "Rule 12(b)(4) challenges the form of the process and the contents of the summons, specifically its noncompliance with Rule 4(b)." *Id.* (citing *Gartin v. Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (per curiam)). While Rule 12(b)(5) "permits a challenge

to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *Naranjo*, 679 F. Supp. 2d at 795 (quoting *Neely v. Khurana*, No. 3:07-cv-1344-D, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008)).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). And a plaintiff's *pro se* status does not excuse a failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, Fed. R. Civ. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*;

*Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff' and would "'transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113

F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

- 7 -

## Analysis

**I.    The motion should be granted under Rule 12(b)(5) because Stancu has not shown that the method of service attempted as to HRI is proper, so the Court has not obtained jurisdiction over HRI.**

"Jurisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (citation omitted). So the undersigned starts with HRI's Rule 12(b)(5) grounds. *See, e.g.*, *Dave v. O'Carroll*, No. 22-40653, 2023 WL 2983567, at *2 (5th Cir. Apr. 18, 2023) (per curiam) (where successfully challenged under Rule 12(b)(5), lack of proper service "means the court never held personal jurisdiction over" the defendant (citations omitted)).

Through his response to the motion to dismiss, Stancu shows that he served the complaint and summons on HRI through a process server who personally served the complaint and summons on a manager at the Hilton Garden Inn in Downtown Dallas. *See* Dkt. No. 6-2; Dkt. No. 12 at 14.

Federal Rule of Civil Procedure 4(h) provides two options for serving a limited liability company like HRI.

Under the first, HRI may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1)(B).

Delivery of the summons and the complaint to a manager at the Hilton Garden Inn is not proper under this option where Stancu fails to provide evidence that the manager is also "an officer, a managing or general agent, or any other agent

authorized by appointment or by law." *Id.*; *see, e.g.*, *Collins v. WAFB, LLC*, Civ. No. 16-15648, 2017 WL 951948, at *2 (E.D. La. Mar. 10, 2017) ("Personal service on someone other than the registered agent is also considered insufficient. *See, e.g.*, *Matthews v. Int'l House of Pancakes, Inc.*, No. 07-2869, 2008 WL 217173, at *4 (E.D. La. Jan. 23, 2008) (dismissing claims for insufficient service of process where the plaintiff attempted to serve the corporate owner of IHOP Restaurants by delivering a copy of the summons and complaint to the general manager at a particular IHOP Restaurant).").

The second option is to perfect service under Texas law. *See* Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1). But

> Texas law requires "strict compliance with the rules for service of process." *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). Texas courts do "not indulge in any presumptions in favor of valid issuance, service, or return of citation." *Allodial Ltd. P'ship v. Susan Barilich, P.C.*, 184 S.W.3d 405, 408 (Tex. App. – Dallas 2006, no pet.) (citing *Primate*, 884 S.W.2d at 152). Thus, "[i]f service of process [is] not executed in strict compliance with Texas state law" by the plaintiff in a federal action, "the court cannot acquire proper jurisdiction over [the] defendant." *Taylor v. Alex. Brown & Sons Inc.*, No. 3:02-CV-0818-P, 2002 WL 31245369, at *3 (N.D. Tex. Oct. 2, 2002) (citing *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973)).
> 
> Pursuant to Texas Rule of Civil Procedure 106[(a)], service must be accomplished by in-person service or mail as follows unless the citation or a court order directs otherwise: "(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition."

*Perkins v. S&R Gold & Silver Exchange, LLC*, No. 3:21-cv-1437-L, 2022 WL 658563, at *2 (N.D. Tex. Mar. 4, 2022).

HRI "is not a person capable of accepting process on its own behalf, and it

therefore must be served through an agent." *Joe Hand Promotions, Inc. v. Deuce's Rockhouse LLC*, EP-17-CV-00116-DCG, 2017 WL 2591812, at *1 (W.D. Tex. June 14, 2017) (quoting *Paramount Credit Inc. v. Montgomery*, 420 S.W.3d 226, 230 (Tex. App. – Houston [1st Dist.] 2013, no pet.)). "A limited liability corporation, such as [HRI], may be served through its registered agent or other agents authorized to receive service such as its managers and members." *Id.* (citing TEX. BUS. ORGS. CODE ANN. §§ 5.201(a), 5.255(3)). And "[s]uch agents may be served by either of the two methods provided in Rule 106(a)." *Id.* (citations omitted).

As this authority reflects, delivery of the summons and the complaint to a manager at the Hilton Garden Inn – who has not been shown to also be a registered agent – is also not proper under Texas law.

This lack of proper service means that the Court has not acquired jurisdiction over HRI. And its motion to dismiss under Rule 12(b)(5) should be granted.

## II. The motion should be granted under Rule 12(b)(6) because Stancu has failed to allege plausible claims under the ADEA and the ADA.

Before addressing the sufficiency of Stancu's allegations under Rule 12(b)(6), HRI contends that the rule provides for the dismissal of the complaint where Stancu fails to allege exhaustion. *See* Dkt. No. 6 at 23-24; Dkt. No. 13 at 7 n.3.

Multiple federal statutes concerning unlawful employment practices require administrative exhaustion. *See, e.g.*, *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019) ("To bring a suit under Title VII, the ADA (disability), or the ADEA (age), a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." (citations omitted)).

The purpose of exhaustion "is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)). Administrative exhaustion therefore "provides an opportunity for voluntary compliance before a civil action is instituted." *Id.*

But these "charge-filing instruction[s are] not jurisdictional…. [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019). That is, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis*, 893 F.3d at 307 (citations omitted).

"To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings." *Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (cleaned up). "Stated another way, the defendant is not entitled to dismissal under [either Rule 12(b)(6) or Federal Rule of Civil Procedure] 12(c) unless the plaintiff has pleaded herself out of court by admitting to all of the elements of the defense." *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (cleaned up).

As HRI notes, Stancu attached an EEOC right-to-sue letter to the complaint. *See* Dkt. No. 3 at 8-9; Dkt. No. 6 at 24. But the undersigned finds unpersuasive – as a ground for dismissal under Rule 12(b)(6) – that, because Stancu then "provides no

information about the factual allegations or grounds for relief raised in [the] EEOC charge, the Court has no means of determining whether Plaintiff fully exhausted his administrative remedies prior to bringing the instant suit." Dkt. No. 6 at 24. Such a pleading deficiency does not equate to admitting to all the elements of the exhaustion affirmative defense.

Turning to the allegations, then, Stancu provides that, while he was employed for HRI, beginning on November 29, 2021, his supervisor "call[ed] him a 'geezer' or 'grandpa' many times" and said to Stancu: "Okay boomer, you have to move faster." Dkt. No. 3 at 3. Stancu also alleges that, on February 7, 2022, he requested, as a reasonable accommodation under the ADA, a 6-hour workday/30-hour workweek. *See id.* While it appears that this accommodation was granted, *see id.* at 3-4, on the second day under it, Stancu alleges that his personal tools were stolen; that he reported this as a burglary to the Dallas police department; that he was told not to clock-in until the report was completed; and that he could not clock-in that day. *See id.* at 4. And Stancu asserts that, because he "was not allowed to clock-in the next day nor the day thereafter," it "was very clear that [HRI] terminated [his] employment by viciously taking him off the schedule." *Id.*

In sum, Stancu contends that, based on these facts, HRI terminated his employment "because of his age, because he asked for a reduced work schedule under the ADA, and in retaliation for reporting [HRI]'s theft of his tools to the Dallas Police Dept." *Id.* at 5.

To plausibly allege (and ultimately prove) claims under the ADEA and the

ADA against an employer or former employer requires that a plaintiff either rely on direct evidence or proceed under a burden-shifting analysis.

"[D]irect evidence is rare" and has been defined "as evidence which, if believed, proves the fact without inference or presumption." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (cleaned up). For example, "[a] statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination." *Id.* (cleaned up).

Because Stancu's allegations do not reflect claims supported by direct evidence, the first step in the burden-shifting analysis requires that he articulate a prima facie case as to each cause of action.

A plaintiff need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).

A district court may therefore rely on the prima facie elements "to frame [its] inquiry" at the pleading stage. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (*Raj* "does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 n.1 (5th Cir. 2017) ("Although not a

pleading standard, this court has looked to the 'evidentiary framework' set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a plaintiff pleads discriminatory intent." (cleaned up)).

So, at this stage, the Court must ask whether Stancu has alleged enough facts, accepted as true, to allege an actionable employment-based claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002).

And, if he has "not pled such facts," it is "proper[ to] dismiss" that claim. *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

The Court should therefore turn to the claims that could be supported by the facts alleged. Liberally construed, those claims appear to be discrimination under the ADEA and the ADA and retaliation under the ADA.

Stancu does not allege that HRI failed to grant his request for an accommodation.

And, to the extent that he includes a reference to the Rehabilitation Act in the complaint, *see* Dkt. No. 3 at 1, "in this Circuit the substantive protections of the Rehabilitation Act and the ADA are the same," *Cavada v. McHugh*, 589 F. App'x 717, 718 n.3 (5th Cir. 2014) (per curiam) (citations omitted), so all claims that Stancu may make under the Rehabilitation Act is incorporated into the ADA analysis below.

Starting with discrimination, "[t]he prima facie elements of a cause of action for violation of the ADEA are, the plaintiff: 1) is within the protected class; 2) is qualified for the position; 3) suffered an adverse employment decision; and 4) was replaced by someone younger or treated less favorably than similarly situated younger employees." *Saunders v. Hous. Foam Plastics*, No. SA-23-CV-00156-XR, 2023 WL 3313118, at *5 (W.D. Tex. May 5, 2023) (citing *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013)). Similarly, to plead a plausible claim of ADA discrimination, a plaintiff must provide facts to support "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

Both claims require as an essential element an adverse employment action. An adverse employment action "need only be a term, condition, or privilege of employment." *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984).

"And, as precedent informs us, the phrase 'terms, conditions, or privileges' should be broadly construed." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (per curiam) (citing *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502-04 (5th Cir. 2023) (en banc)).

But, even after *Hamilton*, it remains settled law that "petty slight and *de minimis* conduct [do] not amount to an adverse employment action." *Dixon v. Garland*, No. 4:23-cv-19-P, 2024 WL 150509, at *6 (N.D. Tex. Jan. 12, 2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

And Stancu alleges no conduct that is more than a slight or *de minimis* other than that he separated from his employment.

But Stancu does not allege that HRI affirmatively fired him.

He instead alleges that he was "terminated" because he was taken "off the schedule," Dkt. No. 3 at 4, and he attaches to the complaint a schedule reflecting that the last date he worked was February 14, 2022, *see id.* at 17-24. These allegations do not plausibly show that Stancu was terminated.

And, while a response to a motion to dismiss does not technically amend the pleadings, Stancu further clarifies in his response that, "[t]he very next day, on February 15, 2022, [he] showed up for work and found all his personal tools stoled [sic] from his tools box. This was an aggressive, harmful, and nasty way of telling Stancu that because of his ADA request they (Defendant) don't want Stancu there anymore – a clear constructive discharge action." Dkt. No. 12 at 6 (emphasis omitted); *see also id.* (asserting that, because he could not locate his supervisor, the HR director, or the general manager, to help him resolve the alleged time clock error, he was "surreptitiously terminated").

And, insofar as Stancu alleges constructive discharge as the adverse employment action, to ultimately "prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting, in turn, *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997))); *see also*

*Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." (citations omitted)).

"Courts analyze constructive discharge claims under an objective standard, looking at the facts of each case to answer: 'Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'" *Millan v. Bexar Cnty., Tex.*, No. SA-21-CV-0659-JKP-HJB, 2022 WL 62541, at *9 (W.D. Tex. Jan. 5, 2022) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

From the perspective of a reasonable employee, "[c]onsideration of whether [Stancu] was constructively discharged is to be viewed in the totality of the circumstances." *Brown v. Affiliated Computer Servs., Inc.*, No. 3:01-cv-135-P, 2002 WL 576028, at *3 (N.D. Tex. Apr. 12, 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

And courts in this circuit have

considered the following events relevant in determining whether a reasonable employee would feel compelled to resign:
(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were

accepted or not.

*Bye*, 49 F.4th at 924 (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991

(5th Cir. 2008) (quoting, in turn, *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473,

481 (5th Cir. 2008))).

> Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation. [And t]he resigning employee bears the burden to prove constructive discharge.

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (cleaned up).

Objectively, Stancu's allegations do not reflect "working conditions [ ] so

intolerable that a reasonable person in the employee's position would have felt

compelled to resign." *Millan*, 2022 WL 62541, at *9.

So he has not alleged an adverse employment action to support a claim of

discrimination under either statute.

Similarly, Stancu has not alleged a plausible retaliation claim under the ADA,

which requires facts from which the Court could infer "that: (1) [the plaintiff] engaged

in an activity protected by the ADA, (2) she suffered an adverse employment action,

and (3) there is a causal connection between the protected activity and the adverse

action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (footnote

omitted); *see, e.g.*, *Chandler v. La Quinta Inns, Inc.*, 264 F. App'x 422, 425-26 (5th Cir.

2008) (per curiam) (observing that an insufficient constructive discharge claim will

not meet the adverse action element of a retaliation claim to state a prima facie case).

And, as to age discrimination, the facts alleged also fail to identify a similarly

situated younger employee, and where "deficiencies in [a plaintiff's] pleadings prevent him from showing that he was … similarly situated to … younger employees," "his claim does not bridge the gap from possibility to plausibility." *Barnes v. Walters*, No. 3:21-cv-3099-X-BT, 2022 WL 18776172, at *4 (N.D. Tex. Sept. 7, 2022) (citations omitted)), *rec. accepted*, 2023 WL 2065058 (N.D. Tex. Feb. 16, 2023).

## III.   The Court should grant Stancu leave to amend and require that he properly serve any amended complaint on HRI within a reasonable time.

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

No substantial reason to deny leave to amend is apparent here. And courts typically offer a *pro se* litigant "an opportunity to amend his complaint before it is dismissed." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But any amended complaint that Stancu may file must "overcome the deficiencies identified" above. *Id.* And he must properly serve that amended complaint on HRI within a reasonable time to be set by the Court.

### Recommendation

The Court should grant the motion to dismiss [Dkt. No. 6] but allow Plaintiff John Stancu an opportunity to amend his claims and require (1) that he properly

serve any amended complaint on Defendant HRI Lodging, LLC within a reasonable time (or obtain a waiver of service from HRI) and (2) that he file the proof of service or any waiver obtained from HRI.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 13, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE